Joseph M. Alioto (SBN 42680)
Theresa D. Moore (SBN 99978)
Thomas P. Pier (SBN 235740)
Jamie L. Miller (SBN 271452)
ALIOTO LAW FIRM
225 Bush Street, 16th Floor
San Francisco, CA 94104
Telephone: (415) 434-8900
Facsimile: (415) 434-9200
Email: jmalioto@aliotolaw.com

[ADDITIONAL COUNSEL LISTED ON LAST PAGE]

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

CASE NO.: **C 13 1309**

STEVEN EDSTROM, BARRY GINSBURG, MARTIN GINSBURG, EDWARD LAWRENCE, SHARON MARTIN, MARK M. NAEGER, JOHN NYPL, DANIEL SAYLE, WILLIAM STAGE,

Plaintiffs,

v.

ANHEUSER-BUSCH InBEV SA/NV, and GRUPO MODELO S.A.B. de C.V. ,

Defendants.

**COMPLAINT FOR INJUNCTIVE RELIEF TO PROHIBIT THE ACQUISITION OF GRUPO MODELO BY ANHEUSER-BUSCH INBEV AS A VIOLATION OF SECTION 7 OF THE CLAYTON ANTITRUST ACT 15 U.S.C. §18**

**COMPLAINT**

Plaintiffs by and through their undersigned attorneys, bring the following Complaint against Defendants Anheuser-Busch InBev NV/SA (hereinafter "ABI"), and Grupo Modelo S.A.B. de C.V. ("Modelo"), and allege as follows:

**SUMMARY OF ACTION**

1.       This is a private antitrust suit brought under Section 16 of the Clayton Antitrust Act (15 USC §26) to permanently prohibit the proposed acquisition by the largest brewer in the world, ABI, of the remainder of Modelo that it does not already own, in violation of Section 7 of the Clayton Antitrust Act (15 USC §18), in that the acquisition may, and most probably will, substantially lessen competition and/or tend to create a monopoly in the production, distribution, and sale of beer in the United States.

2.       The United States is the most profitable beer market in the world.

3.       The U.S. beer industry – which serves tens of millions of consumers at all levels of income—is highly concentrated with just two firms accounting for approximately 80% of all sales nationwide. The proposed merger significantly threatens consumer welfare by the threatened increase in price, elimination of quality, curtailment of innovation, and destruction of consumer choice. By combining the largest and the third-largest brewers of beer sold in the United States, the Defendant ABI, would have more than 54% of the beer market in the United States and sufficient monopoly power to exclude competition and raise prices. Plaintiffs therefore seek to enjoin this acquisition and prevent a serious violation of Section 7 of the Clayton Act.

4.       In 2008, the then number two and number three competitors in the United States, SABMiller and Molson Coors, combined their American businesses, and now account for 30% of the market. At the same time, InBev, the largest brewer in the world, acquired Anheuser-Busch for $50 billion, making the combined Anheuser-Busch InBev ("ABI")

accounts for more than 50% of the US market. Consequently, with Modelo's 5% of the US market, approximately 85% (and some analysts say as much as 90%) of the production, distribution, and sale of beer in the United States will be controlled by only two companies, substantially increasing the probability of price increases; product, service and choice deterioration; price-fixing; elimination of small and regional competitors; control and monopolization of distribution and retail channels; and other probable anticompetitive effects.

5. The United States market is substantially more than simply "highly concentrated," as measured by the objective standards of the universally accepted Herfindahl-Hersch Index ("HHI"). (HHI measures and grades market concentration by adding the squared market share percentages of each of the competitors in the market.) The threshold for "highly concentrated" is 1800. An additional 100 points causes great concern among antitrust enforcers. Here, the market substantially exceeds that number.

6. The post-transaction HHI of the United States beer market will be greater than 2800, plainly a market ripe for probable if not certain collusion and a galloping tendency toward monopoly.

7. The market concentration measures, coupled with the significant increases in concentration, demonstrate that the acquisition is presumed to be anticompetitive.

8. Modelo and ABI aggressively compete in the United States. That competition has resulted in lower prices and product innovations that have benefited consumers across the country. The proposed acquisition would eliminate this competition by further concentrating the beer industry, enhancing ABI's market power, and facilitating coordinated pricing between ABI and the next largest brewer, MillerCoors, LLC. **See Exhibit A** for the approximate market shares of U.S. beer sales.

9. Plaintiffs are consumers and purchasers of Defendants beers who are threatened with loss and damage in the forms of higher prices, fewer services, fewer

- 3 -

*Complaint for Injunctive Relief Against Violations of Section 7 of the Clayton Antitrust Act*

competitive choices, deterioration of products and product diversity, suppression and destruction of smaller actual competitors through exclusive distribution, full-line forcing, and the like, and other anticompetitive effects and consequences that may, and most probably will, result from the elimination of the actual and potential competition of ABI if the acquisition were to be consummated.

10. More than 40% of the population of the United States are consumers of beer, including the beers of ABI and Modelo, and each will be adversely affected if the proposed unlawful transaction were allowed to proceed.

11. An interdependent pricing dynamic exists between the largest brewers, ABI and MillerCoors. These brewers find it more profitable to follow each others' prices than to compete aggressively for market share by cutting price. ABI typically initiates annual price increases in various markets with the expectation that MillerCoors will follow. And often they do.

12. Modelo has resisted ABI-led price hikes. Modelo's pricing strategy—"The Momentum Plan" – seeks to narrow the "price gap" between Modelo beers and lower-priced premium domestic brands, such as Bud and Bud Light (ABI brands). Modelo has put "increasing pressure" on ABI by pursuing a competitive strategy directly at odds with ABI's well-established practice of leading prices upward.

13. Because of Modelo's resistance to ABI price hikes, ABI and MillerCoors have been forced to offer lower prices and discounts for their brands to discourage consumers from "trad[ing] up" to Modelo brands. If ABI were to acquire the remainder of Modelo, this competitive constraint on ABI's and MillerCoors' ability to raise prices would be eliminated.

14. The proposed acquisition will eliminate the substantial head-to-head competition that currently exists between ABI and Modelo. The loss of this head-to-head competition will enhance the ability of ABI to unilaterally raise the prices of the brands that it

- 4 –

would own post-acquisition. and diminish ABI's incentive to innovate with respect to new brands, products, and packaging.

15. ABI's acquisition of the remainder of Modelo will substantially lessen competition and is therefore illegal under Section 7 of the Clayton Act, 15 U.S.C. § 18.

16. ABI has entered into an additional transaction contingent on the approval of its acquisition of the remainder of Modelo. Specifically, ABI has agreed to sell Modelo's existing 50% interest in Crown Imports LLC ("Crown"), which currently imports Modelo beer into the United States –to Crown's other owner, Constellation Brands, Inc. ("Constellation"). ABI and Constellation have also negotiated a proposed Amended and Reinstated Importer Agreement (the "supply agreement"), giving Constellation the exclusive right to import Modelo beer into the United States for ten years. Constellation, however, would acquire no Modelo brands or brewing facilities under this arrangement – it remains simply an importer, required to depend on ABI for its supply of Modelo-branded beer. At the end of the ten-year period, ABI could unilaterally terminate its agreement with Constellation, thereby giving ABI full control of all aspects of the importation, sale, and distribution of Modelo brands in the United States.

17. The sale of Modelo's 50% interest in Crown to Constellation is designed to help ABI win antitrust approval for its acquisition of Modelo, creating a façade of competition between ABI and its importer. In reality, Defendants' proposed "remedy" eliminates from the market Modelo, a particularly aggressive competitor, and replaces it with an entity wholly dependent on ABI. Indeed, as Crown's CEO wrote to his employees after the acquisition was announced: "our #1 competitor will now be our supplier...it is not currently or will not, going forward, be 'business as usual."

18. Constellation has already shown through its participation in the Crown joint venture that it does not share Modelo's incentive to thwart ABI's price leadership. Given that

- 5 –

Constellation was inclined to follow ABI's price leadership *before* the acquisition, it is unlikely to reverse course after—when it would be fully dependent on ABI for its supply of beer, and will effectively be ABI's business partner. Constellation will need to preserve a strong relationship with ABI to encourage ABI from exercising its option to terminate the agreement after 10 years.

19. For the foregoing reasons, the proposed merger will substantially lessen competition in violation of Section 7 of the Clayton Act.

## JURISDICTION

20. This action is brought under Section 16 of the Clayton Antitrust Act, 15 U.S.C. §26, to prevent the Defendants from consummating the acquisition as a violation of Section 7 of the Clayton Antitrust Act, 15 U.S.C. §18. This Court has subject matter jurisdiction of the federal antitrust claims asserted in this action under Section 16 of the Clayton Antitrust Act, 15 U.S.C. §26, and Title 28 United States Code Sections 1331 and 1337.

## PARTIES

### *The Plaintiffs*

21. Each of the plaintiffs named herein below is an individual and a citizen of the state listed as the address for each such plaintiff. Each plaintiff has purchased beer produced by one or both of the defendants, and each plaintiff expects to continue to purchase beer produced by one or both of the Defendants in the future:

Steven Edstrom, 3440 20th Street, #312, San Francisco, California 94110.

Barry Ginsburg, 7 Highgate Road, St. Louis, Missouri 63132.

Martin Ginsburg, 2033 Whitman Court, Chesterfield, Missouri 63005.

Edward Lawrence, 1905 Mar West Street, Tiburon, California 94920.

Sharon Martin, 3033 Willow Creek Estates Dr., Florissant, MO 63031.

Mark M. Naeger, 5914 Crane Circle, St. Louis, Missouri 63109.

John Nypl, 16325 State Highway 49, Grass Valley, California 95949.

Daniel Sayle, 12399 Maverick Dr., #E, Maryland Heights, Missouri 63043.

William Stage, 405 Shrewsbury Avenue, St. Louis, Missouri 63119

*The Defendants*

22.     ABI is a corporation organized and existing under the laws of Belgium, with headquarters in Leuven, Belgium. ABI is the largest brewer and marketer of beer sold in the United States. ABI owns and operates 125 breweries worldwide, including 12 in the United States. It owns more than 200 beer brands, including Bud Light, the number one brand in the United States, and other popular brands such as Budweiser, Busch, Michelob, Natural Light, Stella Artois, Goose Island, and Beck's. ABI employs more than 116,000 worldwide.

23.     ABI is the resulting formation of the acquisition by InBev, the largest brewer in the world, of Anheuser-Busch, the largest brewer in the United States. InBev and now ABI is owned and controlled by families in South America and Belgium.

24.     The Chief Executive Officer of ABI is Carlos Brito. By reason of his position, Mr. Brito controls the manufacturer, distribution, and sale of beer in the United States through ABI.

25.     Modelo is a corporation organized and existing under the laws of Mexico, with headquarters in Mexico City, Mexico. Modelo is the third-largest brewer of beer sold in the United States. Modelo's Corona Extra brand is the top-selling import in the United States. Its other popular brands sold in the United States include Corona Light, Modelo Especial, Negra Modelo, Victoria, and Pacifico.

26.     Both defendants are owned by foreign interests.

27.     Grupo Modelo has approximately 62% of the market for production and sale of beer in Mexico.

28. ABI currently holds a 35.3% direct interest in Modelo, and a 23.3% direct interest in Modelo's operating subsidiary Diblo, S.A. de C.V. ABI's current part-ownership of Modelo gives ABI certain minority voting rights and the right to appoint nine members of Modelo's 19-member Board of Directors. However, as ABI stated in its most recent annual report, ABI does "not have voting and other effective control of...Grupo Modelo."

29. ABI and Modelo executives agree that there is currently vigorous competition between the ABI and Modelo brands in the United States. Indeed, firewalls are in place to ensure that the ABI members of Modelo's Board do not become privy to information about the pricing, marketing, or distribution of Modelo brands in the United States.

30. Modelo executives run its day-to-day business, including Modelo's relationship and interaction with its U.S. importer, Crown. Modelo owns half of Crown and may exercise an option at the end of 2013, to acquire in 2016, the half of Crown it does not already own. Today, Modelo must approve Crown's general pricing parameters, changes in strategic direction, borrowing activities and capital investment above certain thresholds. Modelo also sets the global strategic themes for the brands it owns. Essentially, Crown is a group of employees who report to Crown's owners: Modelo and Constellation.

31. The acquisition gives complete control of Modelo to ABI, and gives ABI full access to competitively sensitive information about the sale of Modelo brands in the United States—access that ABI does not currently enjoy. ABI presently has no day-to-day role in Modelo's United States business and is walled off from strategic discussions regarding Modelo sales in the United States.

32. On June 28, 2012, ABI agreed to purchase the remaining equity interest from Modelo's owners, thereby obtaining full ownership and control of Modelo, for about $20.1 billion.

33. Defendants simultaneously entered into another transaction in an attempt to "remedy" the competitive harm caused by ABI's acquisition of the remainder of Modelo: ABI has agreed to sell Modelo's existing 50% interest in Crown to Constellation, so that Crown, previously a joint-venture between Modelo and Constellation, would become wholly owned by Constellation. As part of this strategy, ABI and Constellation have negotiated a supply agreement giving Constellation the exclusive right to import Modelo beer into the United States for ten years. These transactions are contingent on the closing of ABI's acquisition of Modelo.

34. ABI has the country's largest network of independent distributors/wholesalers, numbering approximately 600. Almost all of the distributors are independent, and operate under exclusive agreements with ABI in which they agree not to deal with any products of any competitor of ABI and not to distribute any products outside of their own designated territories.

35. ABI sells nearly 70 percent of the company's volume in the United States through wholesalers. ABI also owns 14 company-owned distributors/wholesale operations.

36. ABI sold 98 million barrels of beer to United States wholesalers in 2011.

37. The most influential factor in the sale of beer in the United States is advertising.

38. ABI is a substantial advertiser, spending hundreds of millions last year alone.

39. ABI was created from a series of mergers and acquisitions culminating in the merger between Anheuser Bush and InBev in 2008. Previously in 2004, Belgium's Interbrew merged with Brazil's AmBev, creating the world's largest brewer.

40. Prior to forming InBev in the merger of Belgium's Interbrew and Brazil's AmBev in 2004, the world's largest brewers were: (#1) Anheuser-Busch; (#2) SABMiller;

- 9 –

*Complaint for Injunctive Relief Against Violations of Section 7 of the Clayton Antitrust Act*

(#3) Interbrew; (#4) Heineken, and (#5) AmBev. After the combination of Interbrew and AmBev, InBev became the largest brewer in the world.

41. When Interbrew and AmBev combined in 2004, it was then represented publicly by AmBev's CEO Carlos Brito, InBev's present CEO, that the two companies would "operate independently in different hemispheres…" However, after the combination, Mr. Brito changed his mind and decided AmBev would expand its reach from South America into Interbrew's territories in Mexico and North America, and Interbrew would oversee operations in Europe and Asia.

42. As the world's largest brewer, ABI has enormous economic capabilities. ABI has 14 brands that individually generate over 1 billion per year in revenue out of a portfolio of more than 200 brands. Total revenue in 2012 for all ABI brands was over $39 billion.

## NATURE OF TRADE AND COMMERCE

43. Beer is comprised of a wide variety of brands and alcoholic beverages usually made from a malted cereal grain, flavored with hops, and brewed via a process of fermentation. Beer is substantially differentiated from other alcoholic beverages by taste, quality, alcohol, content, image, and price.

44. In addition to brewing, beer producers typically also sell, market and develop multiple brands. Marketing and brand building take various forms including sports sponsorships, print advertising, national television campaigns, and increasingly, online marketing. For example, Modelo recently invested in "more national advertising [and] more national sports" in order to build the equity of [its] brands."

45. Most brewers use distributors to merchandise, sell, and deliver beer to retailers. Those end accounts are primarily grocery stores, large retailers such as Target and Walmart, and convenience stores, liquor stores, restaurants, and bars which, in turn, sell beer to the

consumer. Beer brewed in foreign countries may be sold to an importer, which then arranges for distribution to retailers.

46.     ABI groups beer into four segments: "sub-premium, premium, premium plus, and high-end. The sub-premium segment, also referred to as the value segment, generally consists of lager beers, such as Natural and Keystone branded beer, and some ales and malt liquors, which are priced lower than premium beers, made from less expensive ingredients and are generally perceived as being of lower quality than premium beers. The premium segment generally consist of medium-priced American lager beers, such as ABI's Budweiser, and the Miller and Coors brand families, including the "light" varieties. The premium plus segment consists largely of American beers that are priced somewhat higher than premium beers, made from more expensive ingredients and are generally perceived to be of superior quality. Examples of beers in the premium plus category include Bud Light Lime, Bud Light Platinum, Bud Light Lime-a-Rita, and Michelob Ultra.

47.     The high end category includes craft beers, which are often produced in small-scale breweries, and imported beers. High-end beers sell at a wide variety of price points, most of which are higher than premium and premium plus beers. The high-end segment includes craft beers such as Dogfish Head, Flying Dog, and also imported beers, the best selling of which is Modelo's Corona. ABI also owns high-end beers including Stella Artois and Goose Island. Brewers with a broad portfolio of brands, such as ABI, seek to maintain "price gaps" between each segment. For example, premium beer is priced above the sub-premium beer, but below premium plus beer.

48.     Beers compete with one another across segments. Indeed, ABI and Modelo brands are in regular competition with one another. For example, Modelo, acting through Crown in the United States, usually selects "[d]omestic premium" beer, namely, ABI's Bud Light, as its benchmark for its own brands' pricing.

49. The relevant product market is the production and sale of beer.

50. The relevant geographic market is the United States. There is competition between brewers on a national level that affects local markets throughout the United States. Decisions about beer brewing, marketing, and brand building typically take place on a national level. In addition, most beer advertising is on national television, and brewers commonly compete for national retail accounts. General pricing strategy also typically originates at a national level. A hypothetical monopolist of beer sold in the United States would likely increase its prices by at least a small but significant and non-transitory amount. Accordingly, the United States is a relevant geographic market under Section 7 of the Clayton Act.

51. Within the relevant market, the following well-defined submarkets may exist, which in themselves constitute relevant markets for antitrust purposes: Oklahoma City, OK; Salt Lake City, UT; Tampa/St. Petersburg, FL; Houston, TX; Jacksonville, FL; Minneapolis/St. Paul, MN; Denver, CO; Birmingham/Montgomery, AL; Memphis, TN; Las Vegas, NV; Dallas/Fort Worth, TX; Orland, FL; Los Angeles, CA; Phoenix/Tucson, AZ; Raleigh/Greensboro, NC; Miami/Fort Lauderdale, FL; Hartford, CT/Springfield, MA; Richmond/Norfolk, VA; Chicago, IL; New York, NY; Atlanta, GA; Sacramento, CA; Boston, MA; San Diego, CA; Baltimore, MD/Washington, DC; San Francisco/Oakland, CA.

52. The United States is the world's most profitable beer market.

53. The number of brewers operating plants in the United States has decreased markedly for decades, resulting in a highly concentrated market.

54. The relevant markets are highly concentrated and would become significantly more concentrated as a result of the proposed acquisition.

55. ABI is the largest brewer of beer sold in the United States. MillerCoors is the second-largest brewer of beer sold in the United States. MillerCoors owns the Miller and Coors brands and also many smaller brands including Blue Moon and Keystone Light.

- 12 –

Modelo is the third-largest brewer of beer sold in the United States, with annual U.S. sales of $2.47 billion, 5% market share nationally, and a market share that is nearly 20% in some local markets. Modelo owns the Corona, Modelo, Pacifico, and Victoria brands. The remaining sales of beer in the United States are divided among Heineken and fringe competitors, including many craft brewers, which Defendants characterize as being "fragmented...small player[s]."

56. The beer industry in the United States is highly concentrated and would become substantially more so as a result of this acquisition. Market share estimates demonstrate that in 20 of the 26 local geographic submarkets in paragraph 55, the post-acquisition HHI exceeds 2,500 points, in one market is as high as 4,886 points, and there is an increase in the HHI of at least 472 in at least 20 of those markets.

57. ABI dominates the production and sale of beer in the United States.

58. ABI has 49% of the beer market in the United States.

59. MillerCoors has 30% of the beer market in the United States.

60. Modelo has 5% of the beer market in the United States.

61. Heineken has 4% of the beer market in the United States.

62. The remaining producers of beer including craft beer and micro brewers have 12% of the beer market in the United States.

63. In the United States, the Defendants will have a combined market share of approximately 55% post-transaction. The post-transaction HHI of the United States beer market will be greater than 2,800.

64. The market concentration measures, coupled with the significant increases in concentration, described above, demonstrate that the acquisition is presumed to be anticompetitive.

- 13 –
*Complaint for Injunctive Relief Against Violations of Section 7 of the Clayton Antitrust Act*

65.     Price is the most important consideration in the sale of beer. Indeed, ABI and MillerCoors consider beer to be a commodity and that the only competition between them is with regard to advertising.

66.     Shelf space in major retail chains and other retail outlets is an important part in the sale of beer. The person in charge is usually referred to as the "Category Captain" who determines which beer will be placed on which part of the shelves of the store. These Category Captains are induced, coerced, and given gratuities in order to give ABI and MillerCoors the best possible position on the shelf.

67.     ABI and MillerCoors typically announce annual price increases in late summer for execution in early fall. The increases vary by region, but typically cover a broad range of beer brands and packs. In most local markets, ABI is the market share leader and issues its price announcement first, purposely making its price increases transparent to the market so its competitors will get in line. In the past several years, MillerCoors has followed ABI's price increases to a significant degree.

68.     The specifics of ABI's pricing strategy are governed by its "Conduct Plan," a strategic plan for pricing in the United States that reads like a how-to manual for successful price coordination. The goals of the Conduct Plan include: "yielding the highest level of followership in the short-term" and "improving competitor conduct over the long-term."

69.     ABI's Conduct Plan emphasizes the importance of being "Transparent—so competitors can clearly see the plan." According to ABI, its Conduct Plan "increases the probability of [ABI] sustaining a price increase."

70.     In the past several years, Modelo, acting through Crown, has disrupted ABI's pricing strategy by declining to match many of the price increases that were led by ABI and frequently jointed by MillerCoors.

71.     In or around 2008, Crown implemented its "Momentum Plan" with Modelo's enthusiastic support. The Momentum Plan is specifically designed to grow Modelo's market share by shrinking the price gaps between brands owned by Modelo and domestic premium brands. By maintaining steady pricing while the prices of premium beer continues to rise, Modelo has narrowed the price gap between its beers and ABI's premium beers, encouraging consumers to trade up to Modelo brands. These narrowed price gaps frustrate ABI and MillerCoors because they result in Modelo gaining market share at their expense.

72.     Competition spurred by Modelo has benefitted consumers through lower beer prices and increased innovation. It has also thwarted ABI's vision of leading industry prices upward with MillerCoors and others following.

73.     The proposed merger will increase the ability of ABI and the remaining beer firms to coordinate by eliminating an independent Modelo—which has increasingly inhibited ABI's price leadership—from the market.

74.     ABI and Modelo are substantial and significant potential competitors in the United States.

75.     The production and sale of beer are in a continuous and uninterrupted flow of interstate commerce. Materials used in the production of beer are purchased and shipped in a continuous and uninterrupted flow of interstate commerce.

76.     National brewers possess significant competitive advantages over smaller or regional brewers. They are able to advertise on a nationwide basis, have greater prestige, larger distribution networks, and are less affected by weather and labor issues.

77.     Any restraint of trade in the beer sales market in the United States, including the restraints specifically alleged in this Complaint, directly and substantially restrains and affects interstate commerce.

78.     Any agreement short of prohibiting the acquisition will result in breaking through the price ceiling established by Modelo and immediately give an opening for across the board price increases.

79.     As the foregoing paragraphs show, the effect of the acquisition, if consummated, may be substantially to lessen competition, or tend to create a monopoly in the production and, sale of beer in the United States by eliminating Modelo as an actual or potential competitor and giving to the new company monopoly power and the likelihood of collusion.

80.     By reason of the proposed acquisition, consumer choice and consumer welfare will be eliminated.

81.     By reason of the Defendants' proposed acquisition, Plaintiffs are threatened with loss or damage in the form of higher beer prices and diminished competitive options.  If Defendants' acquisition is consummated, Plaintiffs will sustain irreparable harm for which damages will be unable to compensate Plaintiffs, in that competition once lost cannot easily be restored.  Accordingly, Plaintiffs bring this action for both preliminary and permanent injunctive relief against the ABI acquisition.

## VIOLATIONS ALLEGED

### Section 7 of the Clayton Antitrust Act, 15 U.S.C. §18

82.     Plaintiffs incorporate and reallege paragraphs 1 through 81 above.

83.     The conduct of ABI and Modelo described hereinabove, specifically the agreement to allow ABI to purchase Modelo, constitutes a violation of Section 7 of the Clayton Antitrust Act, 15 U.S.C. § 18, in that the effect of the proposed acquisition may be substantially to lessen competition, or to tend to create a monopoly in the production and sale of beer in the United States. By reason of the violation plaintiffs are threatened with loss or damage in the form of higher beer prices and diminished competition, as well as irreparable

- 16 –

harm for which damages will be inadequate to compensate plaintiffs, such that plaintiffs are entitled to bring suit under Section 16 of the Clayton Antitrust Act, 15 U.S.C. § 26, to obtain preliminary and permanent injunctive relief to prohibit the defendants' acquisition, and to recover their costs of suit, including a reasonable attorney's fee.

84.     Unless restrained and enjoined, ABI will consummate the acquisition of Modelo to the immediate and irreparable damage of the Plaintiffs and the consuming public in that assets and personnel will be commingled and Defendants will immediately institute substantial price increases.

### PRAYER FOR RELIEF

WHEREFORE, plaintiffs demand the following relief from this Honorable Court:

A.     Declaring, finding, adjudging, and decreeing that the agreement between ABI and Modelo proposing that ABI purchase Modelo violates Section 7 of the Clayton Antitrust Act, 15 U.S.C. § 18.

B.     Preliminarily enjoining defendants from consummating their acquisition during the pendency of this action.

C.     Permanently enjoining defendants from consummating their acquisition.

D.     Awarding to plaintiffs their costs of suit, including a reasonable attorney's fee, as provided by Section 16 of the Clayton Antitrust Act, 15 U.S.C. § 26.

E.     Granting to plaintiffs such other and further relief to which they may be entitled and which the Court finds to be just and appropriate.

*Complaint for Injunctive Relief Against Violations of Section 7 of the Clayton Antitrust Act*

1

2    Dated:   March 22, 2013                    **ALIOTO LAW FIRM**

3

4                                              By:

5                                                   Joseph M. Alioto
                                                   Theresa D. Moore
6                                                   Thomas P. Pier
                                                   Jamie L. Miller
7                                                   **ALIOTO LAW FIRM**
                                                   225 Bush Street, 16th Floor
8                                                   San Francisco, CA 94104
                                                   Telephone: (415) 434-8900
9                                                   Facsimile: (415) 434-9200
                                                   Email: jmalioto@aliotolaw.com
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## PLAINTIFFS' COUNSEL

2

3

| | |
|---|---|
| Joseph M. Alioto (SBN 42680)<br>Theresa D. Moore (SBN 99978)<br>Thomas P. Pier (SBN 235740)<br>Jamie L. Miller (SBN 271452)<br>**ALIOTO LAW FIRM**<br>225 Bush Street, 16th Floor<br>San Francisco, CA 94104<br>Telephone: (415) 434-8900<br>Facsimile: (415) 434-9200<br>Email: jmalioto@aliotolaw.com<br>tmoore@aliotolaw.com<br>jmiller@aliotolaw.com | Jeffery K. Perkins (SBN 57996)<br>**LAW OFFICES OF JEFFERY K.**<br>**PERKINS**<br>1550-G Tiburon Blvd #344<br>Tiburon, CA 94920<br>Telephone: (415) 302-1115<br>Facsimile: (415) 435-4053<br>Email: jefferykperkins@aol.com |
| Theodore F. Schwartz (SBN 58946)<br>Kenneth R. Schwartz<br>*(Pending Pro Hac Vice)*<br>**Law Offices of Theodore F. Schwartz**<br>7751 Carondelet, Ste 204<br>Clayton, MO 63105<br>Telephone: (314) 863-4654<br>Facsimile: (314) 862-4357<br>Email: Theodore@schwartz-schwartz.com | John H. Boone (SBN 44876)<br>**LAW OFFICES OF JOHN H. BOONE**<br>4319 Sequoia Drive<br>Oakley, CA 94561<br>Telephone: (415) 317-3001<br>Facsimile: (415) 434-9200<br>Email: deacon38@gmail.com |
| Jack Lee (SBN 71616)<br>Derek Howard (SBN 118082)<br>Sean Tamura-Sato (SBN 254092)<br>**MINAMI TAMAKI LLP**<br>360 Post St. 8th floor<br>San Francisco, CA 94108<br>Tel: (415) 788-9000<br>Email: jlee@MinamiTamaki.com<br>dhoward@minamitamaki.com<br>seant@minamitamaki.com | Gil Messina (NJ SBN 029661978)<br>Timothy A.C. May (NJ SBN 035462007)<br>*Pending Pro Hac Vice*<br>**MESSINA LAW FIRM, P.C.**<br>961 Holmdel Road<br>Holmdel, New Jersey 07733<br>Ph. (732) 332-9300<br>Fax (732) 332-9301<br>Email: gmessina@messinalawfirm.com |
| Peter C. Sullivan<br>*Pending Pro Hac Vice*<br>7751 Carondelet, Ste 204<br>Clayton, MO 63105<br>Telephone: (314) 863-4654<br>Facsimile: (314) 862-4357<br>Email: peter@petercsullivan.com | |

24

25

26

27

28

- 19 -
*Complaint for Injunctive Relief Against Violations of Section 7 of the Clayton Antitrust Act*

# EXHIBIT A

# Market Share Comparison – U.S. Beer Sales*
Pre-Acquisition vs. Post-Acquisition



U.S. beer sales market share,
pre-acquisition

U.S. beer sales market share,
post-acquisition

*Source: Antitrust American Institute Report by Bernard Ascher, using National Beer Wholesalers Association (NBWA) 2010 Fact Sheet

# Market Share Comparison – U.S. Beer Sales*
Pre-Acquisition



*Source: Antitrust American Institute Report by Bernard Ascher, using National Beer Wholesalers Association (NBWA) 2010 Fact Sheet

# Market Share Comparison – U.S. Beer Sales*
## Post-Acquisition



*Source: Antitrust American Institute Report by Bernard Ascher, using National Beer Wholesalers Association (NBWA) 2010 Fact Sheet